UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION NO. |
| | : | 3:09-cr-271 (VLB) |
| v. | : | |
| | : | |
| REGINALD CUMMINGS | : | |
| | : | |
| | : | April 20, 2011. |

**MEMORANDUM OF DECISION GRANTING THE DEFENDANT'S [DOC. #93] MOTION FOR A NEW TRIAL PURSUANT TO RULE 33(a) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE AS TO COUNT SEVEN OF THE SUPERSEDING INDICTMENT CHARGING THE DEFENDANT WITH SOCIAL SECURITY FRAUD**

The defendant, Reginald Cummings, moves pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure for a new trial based on the Government's failure to disclose information that would have enabled the defendant to impeach the testimony of Robert Harry a member of the Trumbull Police Department ("Officer Harry") who testified to the events surrounding the defendant's arrest for uncharged conduct in the city of Trumbull (the "Trumbull arrest"). Officer Harry's testimony was elicited by the Government in support of Count Seven of the superseding indictment (the "superseding indictment"), which charged the defendant with social security fraud in connection with an arrest by a member of the Bridgeport Police Department ("Bridgeport arrest"). Officer Harry's testimony was used to establish, based on largely identical conduct during the Trumbull arrest, that the Defendant's presentment of identity documents to the Bridgeport officer was not a mistake. In addition, Officer Harry

1

testified that he retrieved a Massachusetts identification card bearing the name of Yvonne Lallo, the person whose identity was allegedly used to commit the access device fraud charge levied in Count Four of the Indictment.  Finally, Officer Harry corroborated the authentication of the identity card introduced as the Government's Exhibit 20.  The defendant contends that he is entitled to a new trial as to not only Count Seven but also as to Count Four, maintaining that the officer's testimony influenced the jury's findings as to both counts.

By way of background, the defendant was arrested pursuant to a criminal complaint dated March 5, 2009 charging him with violations of 18 USC §§ 1344, 1349, 1341 and 1028(a)(1).  The Defendant was thereafter indicted on December 3, 2009, which was superseded on May 6, 2010 by the aforementioned superseding indictment.  Count Seven of the superseding indictment charged the defendant with social security fraud, in violation of 42 U.S.C. § 408(a)(7)(B).  Count Seven was predicated on the defendant's arrest by the Bridgeport Police Department and his statement that he was Manual Rosado, his subsequent statement that he was Reginald Cummings and his statement that he was issued a social security number ending with the numbers 3414.  Count Four charged him with access device fraud in violation of 18 U.S.C. § 1029(a)(2) based upon a claim that he used the identity of Yvonne Lallo to obtain and use a credit card.

Officer Robert Harry testified to the events surrounding defendant's arrest in the Town of Trumbull on November 11, 2008.  He recounted that the defendant was in possession of a number of different pieces of identification with different names, and that the defendant provided the officer with different names and

different social security numbers during the course of his arrest. Specifically, Officer Harry testified that the defendant provided a social security number ending with the numbers "3414." Count Seven of the superseding indictment charged the defendant with using that social security number fraudulently.

Prior to Officer Harry's testimony, the Court instructed the jury that the testimony of Officer Harry was offered solely to establish that the defendant did not mistakenly use a false social security number during his Bridgeport arrest. The jury was further instructed by the Court that it could use Officer Harry's testimony solely for the purpose of determining whether the defendant knowingly provided the wrong social security number to a member of the Bridgeport Police Department. The Trumbull Police Department records reflected that the defendant gave a social security number ending in "3275," and not "3414." Officer Harry also testified that his partner, who was not called as a witness, erroneously recorded the number as ending in "3275" on the defendant's Uniform Arrest Report and that the defendant actually provided a Social Security number ending in "3414." [See, Transcript of the testimony of Police Officer Robert Harry, October 13, 2010, P. 29, Line 4 through P. 32. Line 4]. Upon cross-examination, defense counsel questioned Officer Harry extensively about his role in the preparation and correction of that police report and police reports generally. [See, Transcript of the testimony of Police Officer Robert Harry, October 13, 2010, P. 35, Line 16 through P. 48. Line 7].

Officer Harry further testified that during the Trumbull arrest, a search of a vehicle occupied by the defendant yielded Exhibit 20, a Massachusetts

identification card bearing the name of the victim whose personal information was charged as having been used by the defendant in connection with Count Four, the access device fraud charge. While the identification card included the victim's name, it bore the picture of an Elizabeth Santelle-Vega.

In charging the jury, the Court instructed that "[t]he mere fact that a witness is a law enforcement officer does not in and of itself mean that individual's testimony is deserving of more or less consideration or greater or lesser weight." The Court also reminded the jury of the limited purpose for which the Government offered evidence tending to show that on a different occasion the defendant engaged in conduct similar to that charged in the indictment, and further instructed the jury not to "consider th[at] evidence as proof that the defendant ha[d] a criminal personality or bad character" and that the evidence could only be used "to determine whether the defendant acted knowingly and intentionally and not accidentally, mistakenly or otherwise innocently." The jury was instructed that such evidence could not be considered for any other purpose and that it could "only be used for the limited purpose for which it was admitted." During jury selection, the court excluded all venire persons who expressed the belief that law enforcement officers were more credible than others or who would give more weight to the testimony of law enforcement officials.

Prior to trial, the defense sought disclosure of Officer Harry's employment history for possible impeachment purposes and was informed that Officer Harry had not committed any misconduct. On February 16, 2011, the day of defendant's

initially scheduled sentencing, the Government disclosed *Giglio*[1] material, of which it had recently been made privy. The material consisted of Trumbull Police Department records that in October 2009 Officer Harry engaged in misconduct involving dishonesty and falsification of a department arrest record. Specifically, the records revealed that he misappropriated for his own use a keg of beer confiscated as evidence of an offense and altered the arrest records in an attempt to conceal his theft. The disclosure included the fact that Officer Harry was suspended for commission of an ethics violation.

The defendant contends that Officer Harry's misconduct is material, newly-discovered evidence that was not known at the time of the trial, and that could not have been discovered by due diligence on the part of defendant prior to its disclosure by the Government after trial, and therefore warrants a new trial pursuant to Rule 33(a) on both counts.

As noted, Count Four charged the defendant with access device fraud. Underlying that charge was a claim that the defendant used the personal information of a female victim to obtain a credit card account in her name, without her knowledge or permission, and that the defendant then provided that card to two women who, at his direction obtained merchandise and gift cards primarily for the defendant's benefit. Among the witnesses for the Government were the women who used the credit card and the victim in whose name the

---

[1] In *Giglio v. U.S.* 405, U.S. 150 (1972), the Supreme Court explicitly noted that its holding in *Brady v. Maryland*, 373 U.S. 83 (1963) that suppression of material evidence justifies a new trial extends to the nondisclosure of evidence affecting a witness' credibility. *Giglio,* 405 at 153-54.

5

defendant caused the card to be issued without her knowledge or permission. All of these women testified credibly. The most credible and compelling witness for the Government on Count Four was the defendant's girlfriend, Ms. Plummer. Although she is a convicted criminal, she convincingly testified as to her continued affection for the defendant and remorsefully admitted to using the card at the direction and primarily for the benefit of the defendant. Ms. Santelle-Vega testified to being a young single mother with little means to support herself and her child who was enticed by the defendant and Ms. Plummer to conspire with them. She also testified that it was her photograph on the Massachusetts identification card found in the vehicle searched incident to the defendant's Bridgeport arrest. The victim testified that she did not authorize nor know of the issuance of the credit card and did not use and did not authorize its use. She also testified that she did not live in the state, much less at the address to which the card and related billing statements were mailed. Also introduced into evidence was the testimony of the U.S. Postal Inspector investigator and surveillance photos of the defendant accessing the mailbox at the address where the credit card and credit card statements were mailed. Among other things, he testified that the defendant was not the addressee and that the mailbox did not belong to the defendant. The evidence offered at trial also included records taken from the defendant's home, bearing the victim's identifying information.

      The jury found the defendant guilty of social security fraud in connection with his Bridgeport arrest pursuant to Count Seven, and also found the defendant

guilty of access device fraud, pursuant to Count Four of the superseding indictment.

## DISCUSSION

Rule 33(a) of the Federal Rules of Criminal Procedure provides, in part: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The failure to disclose *Giglio* material has been found to be a basis for granting a new trial pursuant to Rule 33(a). *See, U.S. v Andrews*, 824 F. Supp 1273 (N.D. Ill. 1993). In *U.S. v Cuffie*, 80 F.3d 514 (D.C. Cir. 1996), the Court found that the failure to disclose that a key witness against the defendant had perjured himself in another judicial proceeding was the basis for a new trial: "Because there is a reasonable probability that the verdict would have been different if [defendant] had been able to use the undisclosed evidence to impeach [the witness] at trial, we reverse and remand for a new trial." *Id*. at 515. In the case at bar had Officer Harry not mislead the Government and disclosed his disciplinary history before trial, that *Giglio* information would have impeached Officer Harry's testimony and cast doubt on the Government's social security fraud charge as the conduct to which Officer Harry testified was nearly identical to that alleged in Count Seven. It is also conceivable but less likely that his impeachment could have cast doubt on the authenticity of the Massachusetts identification card derived incident to the search of the vehicle occupied by the defendant at the time of the Trumbull arrest.

Where, as here, the defendant could not have in the exercise of due diligence discovered the impeachment material prior to trial the court may grant a motion for new trial based on newly discovered evidence "if the interests of justice so require." Fed. R. Crim. P. 33. In determining whether justice requires a new trial, the court must consider the following additional factors: "whether . . . (2) the evidence demonstrates that a witness in fact committed perjury; (3) the new evidence is material [to the count which the evidence was offered to prove]; and (4) the new evidence is not cumulative." *U.S. v. Middlemiss*, 217 F.3d 112, 122 (2d Cir. 2000).

The critical question is whether, taking all of the evidence into consideration, the undisclosed evidence was likely to have altered the outcome of the case. "To secure a new trial based on a violation of *Brady* or *Giglio* a defendant must demonstrate 'a reasonable probability that, had the suppressed information been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Basciano*, 384 Fed.Appx. 28, 2010 WL 2802566, at *1 (2d Cir. 2010) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995)).

The Government concedes that the four factors identified in *U.S. v. Middlemiss* are satisfied with respect to Count Seven, the offense for which the testimony was offered. Neither the Government nor defense counsel could have discovered the evidence with due diligence before or during trial as both Officer Harry and the Trumbull Police Department were asked whether Officer Harry committed misconduct and both indicated no such history. Nor does the

8

**Government contest that the misconduct is both material and non-cumulative. Finally, the Government does not contest that the jury, absent the disclosure, had little reason to doubt Officer Harry's credibility in general or his testimony about the information that the defendant gave him. Had Officer Harry's misconduct been known to the defense and disclosed to the jury through cross-examination, the jury would have had a reason to doubt Officer Harry's credibility and thus his testimony that the defendant gave a false social security number other than that listed in the arrest report. As a consequence, the probative value of his testimony in establishing that the defendant did not mistakenly give the Bridgeport police a false social security number would have been diminished if not non-existent. The defendant has therefore demonstrated a reasonable probability that, had the suppressed information been disclosed to the defense, the result of the proceeding would have been different as to Count Seven of the superseding indictment.**

The parties do dispute whether the third factor is satisfied with respect to Count 4. The access device count however, was predicated on separate, distinct and independent facts, about which Officer Harry's testimony was cumulative of the overwhelming evidence of his guilt, including the testimony of Santelle-Vega, Plummer, Lallo and the U.S. Postal inspection official, and the physical evidence, including the surveillance photos and contents of the defendant's briefcase. To the extent the defendant seeks a new trial as to the Count Four charge of access device fraud, that motion is denied.

The Court's conclusion as to Count Four remains undisturbed by Officer Harry's testimony regarding his acquisition, from the defendant, of the identification card bearing the information of the victim of the access device fraud. The existence of that card was substantiated by separate testimony and by the identification card itself. Further the disclosure of the impeachment evidence would not have undermined the jury's acceptance of the identification card as physical evidence, as the identification card incorporated Elizabeth Santelle-Vega's image. A jury would therefore have to conclude that Officer Harry manufactured the card in collusion with Ms. Santelle-Vega prior to the arrest, and/or with the Government to create the card. The Defense however concedes that there is no indication that the Government played a role in Officer Harry's failure to disclose his disciplinary history or acted in bad faith in any other manner. Similarly, there is no basis whatsoever to support such a suspicion. In sum, Officer Harry's testimony was immaterial to Count Four because its content was cumulative of other evidence provided. The defendant is unable to demonstrate to a reasonable probability that disclosure of the suppressed information would have changed the jury's finding of guilt for Count Four, and a new trial is therefore unwarranted.

## Conclusion

Accordingly, the defendant's motion for a new trial [Doc. #93] is granted as to Count Seven Social Security Fraud in violation of 42 U.S.C. § 408(a)(7)(B), the

**sole count for which the jury was instructed and presumed to have used Officer Harry's testimony, and denied as to Count Four Access Device Fraud in violation of 18 U.S.C. § 1029 (a)(2).**

                                    **IT IS SO ORDERED.**

                                  **_____/s/_____**
                                  **Hon. Vanessa L. Bryant**
                                  **United States District Judge**

**Dated at Hartford, Connecticut: April 20, 2011.**